Filed 4/21/22  P. v. Ambriz CA4/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G060042 |
| v. | (Super. Ct. No. 18NF1250) |
| AUSTIN JOSEPH AMBRIZ, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Richard M. King, Judge.  Affirmed.

Thomas Owen, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal and Andrew Mestman, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Austin Ambriz was convicted of murder for fatally stabbing Luke Lindsey during an altercation in Brea.  On appeal, he contends the prosecutor

violated *Batson v. Kentucky* (1986) 476 U.S. 79 (*Batson*) and *People v. Wheeler* (1978) 22 Cal.3d 258 (*Wheeler*) by using her peremptory challenges to remove people of color from the jury panel. Appellant also raises a discovery issue related to Lindsey's school records. Finding no basis for reversal, we affirm the judgment.

## FACTS

One night in 2018, Lindsey and his girlfriend were hanging out and smoking marijuana at a friend's apartment. As the night wore on, Jason Burger joined them outside the apartment for a smoke. Then Burger called appellant and Robert Mejia, with whom he had been drinking early that evening, to come and pick him up.

When appellant and Mejia arrived at the complex, appellant and Lindsey got into a dispute and squared off against each other. But as soon as they begin to scuffle, appellant pulled a knife and stabbed Lindsey in the stomach. Lindsey, who had drugs and alcohol in his system, succumbed to his wounds later that night at the hospital. As it turned out, he and appellant had argued in the past, and according to one witness, appellant had previously stated he wanted to kill Lindsey.

At trial, however, appellant testified he acted in self-defense. He claimed he only pulled out his knife because Lindsey was beating him up, and he never actually stabbed Lindsey. Rather, Lindsey simply ran into the knife while he was holding it out in front of him. The jury did not see it that way. It convicted appellant of second degree murder with a deadly weapon, for which he was sentenced to 16 years to life in prison.

## DISCUSSION

### *Batson/Wheeler Claim*

During voir dire, appellant, who is Hispanic, challenged as discriminatory the prosecutor's decision to excuse certain Hispanics and African-Americans from the jury panel. Although the trial court eventually found there was a prima facie showing of discrimination with respect to the African-Americans, it ultimately accepted the prosecutor's proffered justifications for their removal, and therefore it denied appellant's

2

*Batson/Wheeler* motion.  Appellant claims the court's ruling lacks substantial evidentiary support, but the record shows otherwise.

"""Both the federal and state Constitutions prohibit any advocate's use of peremptory challenges to exclude prospective jurors based on race."' [Citation.] '"Doing so violates both the equal protection clause of the United States Constitution and the right to trial by a jury drawn from a representative cross-section of the community under article I, section 16 of the California Constitution."' [Citation.]  The law also recognizes '"a rebuttable presumption that a peremptory challenge is being exercised properly, and the burden is on the opposing party to demonstrate impermissible discrimination." [Citation.]  "A three-step procedure applies at trial when a defendant alleges discriminatory use of peremptory challenges.  First, the defendant must make a prima facie showing that the prosecution exercised a challenge based on impermissible criteria.  Second, if the trial court finds a prima facie case, then the prosecution must offer nondiscriminatory reasons for the challenge.  Third, the trial court must determine whether the prosecution's offered justification is credible and whether, in light of all relevant circumstances, the defendant has shown purposeful race discrimination. [Citation.]  'The ultimate burden of persuasion regarding [discriminatory] motivation rests with, and never shifts from, the [defendant].'"' [Citation.]" (*People v. Holmes, McClain and Newborn* (2022) 12 Cal.5th 719, 759-760.)

Defense counsel first raised the issue of possible discrimination after the prosecutor used a peremptory challenge to remove Prospective Juror No. 219, an African-American woman, from the jury panel.  Noting the prosecutor had previously excused a prospective juror of Hispanic ancestry, defense counsel claimed Prospective Juror No. 219's removal violated *Batson/Wheeler* because she was the second person of color who was excused by the People.  However, the trial court did not believe there was prima facie evidence of discrimination because there were still African-Americans and

3

Hispanics on the jury panel at that time. It thus denied defense counsel's motion to keep Prospective Juror No. 219 on the jury.

The court ruled similarly after the prosecutor removed another Hispanic from the jury panel. Although defense counsel argued "there seems to be a pattern of excluding minorities" by the prosecution, the court disagreed on the basis there were still about 20 panel members who had Hispanic-sounding surnames.

However, after the prosecutor excused another African-American woman from the panel, Prospective Juror No. 196, the court came to a different conclusion. Based on the fact there were far fewer African-Americans on the panel than Hispanics, the court found there was a prima facie showing the prosecutor was targeting African-Americans for removal. Therefore, the court asked the prosecutor to explain why she had excused Prospective Jurors No. 219 and 196.

The prosecutor said she believed Prospective Juror No. 219 would be distracted by other matters if she served on the jury. This belief, the prosecutor explained, was partly based on Prospective Juror No. 219's stated concerns about her ailing father, who was hospitalized in another time zone. Indeed, Prospective Juror No. 219 was very candid in her voir dire answers about how much this issue was weighing on her mind and how serving on the jury would potentially interfere with her ability to communicate with her father. She also indicated the clinic where she worked would have to shut down on the days she had jury duty if she could not find someone to cover for her. The prosecutor told the court this work-related issue also contributed to her belief that Prospective Juror No. 219 would not be a fully attentive juror.

The prosecutor's concerns regarding Prospective Juror No. 196 related to a different matter. When questioned during voir dire, Prospective Juror No. 196 had stated she had two nephews living with her who had been involved with the criminal justice system. One of them had previously served time for robbing a gas station, and the other was currently under house arrest for selling drugs. She also said the drug case was based

4

on a "raid" that the police had carried out at her home. Given those circumstances, the prosecutor believed it would be very difficult for Prospective Juror No. 196 to be impartial if she served as a juror on this case.

In response, defense counsel argued that due to the bias against black men in policing and the courts, it would have an unfair impact on African-Americans if knowing someone who was involved in the criminal justice system was a disqualification for jury service. Defense counsel also pointed out that Prospective Jurors No. 219 and 196 both said they could judge the case fairly if they were selected to sit on the jury. However, the court found the prosecutor's stated justifications for removing them to be credible and legally valid. It also noted that, notwithstanding their removal, there was an African-American man in the jury box whom the prosecution had previously passed on.[1] It thus denied defense counsel's request to keep Prospective Juror No. 196 on the jury.

When voir dire resumed, the prosecutor exercised a peremptory challenge to remove Prospective Juror No. 168, who was the third African-American to be excused by the People. Asked to explain her reasons for doing so, the prosecutor said Prospective Juror No 168 appeared to have trouble with her hearing when she was questioned. The prosecutor felt this problem would only be exacerbated during trial if Prospective Juror No. 168 sat on the case because the jury was going to be spread out in the courtroom to guard against the spread of Covid-19. The trial court felt this was a valid concern. In fact, after reviewing the transcript of voir dire, the court agreed with the prosecutor that many of Prospective Juror No. 168's answers were odd and nonresponsive. It thus rejected defense counsel's claim that the prosecutor was targeting African-Americans for removal in violation of *Batson/Wheeler*.

On appeal, appellant broadly accuses the prosecutor of using her peremptory challenges to "strike persons of color called to the jury box." However,

---

[1] This man ultimately served on the jury during trial.

appellant does not contest the removal of any Hispanic prospective jurors in particular, nor does he contest the trial court's ruling there was not a prima facie showing of discrimination with respect to the removal of Hispanics from the jury panel. Instead, appellant's argument focuses on the prosecutor's justifications for removing Prospective Jurors No. 196, 219 and 168. According to appellant, the prosecutor's decision to remove these African-Americans from the panel was racially motivated, and the trial court erred in finding otherwise.

At the outset, we note the record shows the trial court was very conscientious of the concerns raised by defense counsel during voir dire. Throughout the jury selection process, the court made a sincere and reasoned effort to examine the prosecutor's purported justifications for dismissing the prospective jurors in question to ensure they were not a pretext for purposeful discrimination against African-Americans. And as part of that examination process, the court gave defense counsel every opportunity to speak to the legitimacy of those justifications. Accordingly, our review is limited to determining whether substantial evidence supports the trial court's ruling. (*People v. Krebs* (2019) 8 Cal.5th 265, 290.)

In making that determination, "'We give great deference to the trial court in distinguishing bona fide reasons from sham excuses.' [Citations.]" (*People v. Boyette* (2002) 29 Cal.4th 381, 422.) Because the ability to make this distinction turns on subtle impressions and intangible factors, we must be cautious not to second-guess the trial judge's evaluation of those considerations based on a cold appellate record. (*Stevens v. Davis* (9th Cir. 2022) 25 F.4th 1141, 1151-1152.) That doesn't mean our review is toothless; but as we have noted, "'[T]he ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike.' [Citations.]" (*People v. Stevens* (2007) 41 Cal.4th 182, 192.)

The bulk of appellant's argument is centered around the removal of Prospective Juror No. 196. Although the prosecutor said she struck this prospective juror

6

because she had two nephews living with her who have had negative experiences with the criminal justice system, appellant contends that justification was merely an excuse for discriminating against African-Americans.[2] Echoing the objection defense counsel raised in the trial court, appellant contends, "Given the high incarceration rates of black males, it is probable that a black juror would have family members who have had issues with law enforcement. If this court allows such a stated reason to be the basis for excluding black jurors, it is facilitating a vicious circle whereby black jurors will be de facto excluded from juries."

We are sympathetic to this concern. Indeed, historical racial disparities in the enforcement and adjudication of criminal laws is one of the reasons the Legislature recently enacted Code of Civil Procedure section 231.7 to impose new restrictions on peremptory challenges in criminal cases. (See Stats. 2020, ch. 318, § 2; Semel et al., Whitewashing the Jury Box: How California Perpetuates the Discriminatory Exclusion of Black and Latinx Jurors (June 2020).) Per that law, a peremptory challenge based on a prospective juror having a close relationship with a person who has been stopped by the police, arrested, or convicted of a crime is presumptively invalid. (Code Civ. Proc., § 231.7, subd. (e).) However, by its terms, this new statute only applies to trials which began after January 1, 2022. (*Id*. at subd. (i).) Because appellant's trial was conducted in 2020, our review is based on legal authority preceding the statute's enactment. (*People v. Silas* (2021) 68 Cal.App.5th 1057, 1069, fn. 12.)

Under that authority, "'the use of peremptory challenges to exclude prospective jurors whose relatives and/or family members have had negative experiences with the criminal justice system is not unconstitutional.' [Citation.]" (*People v. Roldan* (2005) 35 Cal.4th 646, 703, disapproved on other grounds in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22; see, e.g., *People v. Gutierrez* (2002) 28 Cal.4th 1083, 1123

[2] In his briefing, appellant refers to the nephews as Prospective Juror No. 196's cousins. However, during voir dire, Prospective Juror No. 196 said the nephews were cousins to each other, not her.

[prospective juror's father's incarceration found to be "a valid race-neutral reason to excuse him"]; *People v. Farnam* (2002) 28 Cal.4th 107, 138 ["close relative's adversary contact with the criminal justice system" is one basis on which the prosecutor might reasonably have challenged prospective jurors]; *People v. Garceau* (1993) 6 Cal.4th 140, 172, disapproved on another ground in *People v. Yeoman* (2003) 31 Cal.4th 93, 117 [prosecutor justifiably removed a prospective juror whose family members "had run afoul of the law"]; *People v. Cummings* (1993) 4 Cal.4th 1233, 1282 [prospective juror whose brother was convicted of a crime was properly excused].)

Therefore, our focus is not on the legality of the justification the prosecutor offered in removing Prospective Juror No. 196, but on whether that justification was genuine. Appellant argues it was not because during her voir dire Prospective Juror No. 196 said she believed her nephews were justifiably prosecuted, and their experiences would not prevent her from being able to assess the credibility of police officers in a fair and impartial manner. Appellant contends this shows the prosecutor's stated reasons for striking Prospective Juror No. 196 were but a pretext for purposeful discrimination.

However, "the prosecution is not required to accept at face value a prospective juror's assurance that, despite an answer indicating the contrary, she would have no problem being neutral." (*People v. Rushing* (2011) 197 Cal.App.4th 801, 812.) Otherwise, a prosecutor could never challenge an obviously-biased prospective juror who professes she could still be fair. Rather than tying the prosecutor's hands in that regard, case law recognizes that a prospective juror's assurances of impartiality do not shield her from removal when, as here, the record shows she has reason to be biased against the prosecution by virtue of a close relationship with people who have had a negative experience with the criminal justice system. (See, e.g., *People v. Avila* (2006) 38 Cal.4th 491, 554-555; *People v. Farnam, supra,* 28 Cal.4th at p. 138; *People v. Cummings, supra*, 4 Cal.4th at p. 1282.)

Nevertheless, appellant claims a discriminatory intent can be inferred from the prosecutor's decision to target Prospective Juror No. 196 because the prosecutor did not seem to have a problem with the fact that one of the prospective jurors who is not black, Prospective Juror No. 155, had a son who had been convicted of domestic battery. In fact, contrary to how she queried Prospective Juror No. 196, the prosecutor did not ask Prospective Juror No. 155 any follow-up questions about that matter and ultimately accepted her as a juror on the case.

We find appellant's attempt to equate Prospective Juror No. 155 with Prospective Juror No. 196 unpersuasive. Whereas one of Prospective Juror No. 196's nephews was currently under house arrest for dealing charges, and the other had served time for robbery, Prospective Juror No. 155 said her son's domestic battery conviction arose out of a Title IX incident in college and had been expunged from his record altogether. And unlike the situation with Prospective Juror No. 196, who lived with her nephews and had her home "raided" by the police due to their criminal activity, there is nothing to suggest Prospective Juror No. 155 was personally impacted in a comparable fashion by her son's misconduct. We simply do not believe these two prospective jurors were similarly situated so as to draw an inference of discrimination from the prosecutor's decision to remove one and keep the other. (See *People v. Watson* (2008) 43 Cal.4th 652, 672-682 [rejecting the defendant's comparative analysis of jurors who were similar in some ways but not in others]; *People v. Stevens, supra,* 41 Cal.4th at p. 196 [same].)

But what's more important is that the trial court did not see this as evidence of discrimination. It is his decision we are reviewing and we're reviewing it for abuse of discretion. That requires a stronger showing than this.

The same reasoning applies to the removal of Prospective Juror No. 219. Even though she expressed concerns the clinic where she worked might have to shut down during the lengthy trial if she were selected to serve on the jury, appellant contends this was not a valid reason for her removal because other professionals on jury panel

"were stuck in a similar position."  However, appellant fails to support this claim with any specific evidence.  He also fails to appreciate that Prospective Juror No. 219 was dealing with the added stress of having a very ill father in another time zone.  Prospective Juror No. 219 candidly admitted during questioning that this circumstance would have made it hard for her to give her full attention to the trial.  Given everything she had going on at the time, the prosecutor could reasonably conclude Prospective Juror No. 219 would be unduly distracted by extraneous events to give full and proper attention to her duties as a juror.  (See *People v. Clark* (2011) 52 Cal.4th 856, 907-908 [prosecutor's concerns about prospective juror having "divided loyalties" between the trial and other matters was a valid race-neutral justification for his removal].)  And the trial court could reasonably accept that justification.

The prosecutor's justification for excusing Prospective Juror No. 168, the third African-American targeted for removal, is also supported by substantial evidence.  In response to the prosecutor's claim that Prospective Juror No. 168 seemed hard of hearing, the trial court reviewed her voir dire responses and observed there were at least two times where the prosecutor had to repeat questions to her.  In addition, the court was concerned Prospective Juror No. 168's answers to some of the questions posed to her seemed disconnected and nonresponsive.

Based on our review of Prospective Juror No. 168's voir dire, we are satisfied this was a fair characterization of her responses.  In fact, we counted four separate instances where she had trouble hearing a particular question.  Therefore, we have no reason to second-guess the trial court's decision to uphold her removal from the jury panel.

Considering the entire record presented, including the fact that one African-American actually served on the jury that convicted appellant, we are convinced the trial court acted properly in denying appellant's *Batson/Wheeler* motion.  There is no basis for disturbing that decision.

10

*Discovery Issue*

In light of appellant's self-defense claim, the trial court granted defense counsel's request to review the victim's school records in camera to determine whether they contained anything indicating he had a propensity for violent conduct. However, the court found no such information, and having independently reviewed the records ourselves, we agree they are bereft of any discoverable material. Therefore, appellant was not denied information bearing on the fairness of his trial.

DISPOSITION

The judgment is affirmed.


BEDSWORTH, J.

WE CONCUR:


O'LEARY, P. J.


ZELON, J.*


*Retired Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11